The central question in this case is whether Mr. Bethea can continue to qualify for consideration for compassionate release, even after getting the vaccines, even after what, even after a number of conditions that put him at dramatically elevated risk of COVID-19. Is your brief that pitches this that the only reason that the district court denied it was that he had got the vaccine? That's correct, Your Honor. I don't think that's reflected in the record. Analytically, Your Honor, vaccination was the dispositive point that disqualified Mr. Bethea from compassion. And if we disagree with you, then you lose? Is that what you're saying to me? No, Your Honor. Branch out to other arguments. Your Honor, the… I would make that argument if you want to, but I would also make other arguments. Certainly, Your Honor. I'll touch on the two points that the government identifies as… To be clear where Judge Mars is going, if you read that district court's answer, it's clear that's not all that the district court relied upon. Yes, Your Honor. It's rather unfair. We don't mean to read the language to you, but sometimes it's, I mean, we're the court, we like to hear argument, but why have you go this, if it's clear what we're seeing, unless you can tell us it's not clear, but it's right there. Well, yes, Your Honor, there's… And you're supposed to move to another point. I think what she's making. Understood, Your Honor. I think there's essentially three COVID-19 related considerations that the district court identified. Of the three, vaccination is the only one that could have flipped Mr. Bethea from qualified to disqualified for compassionate release. As a baseline, he faces an extraordinarily elevated risk of COVID-19. He's a 47-year-old racial minority in one of the highest COVID risk facilities in the BOP system. He also has a number of medical conditions. He has stage renal failure that requires him to get dialysis three times a week. Has he contracted COVID-19 since this ruling? Your Honor, it's not on the record. He has tested a number of times and has not tested positive, Your Honor, as far as I'm quite confident he's not, Your Honor. But he does continue to face an elevated risk as the CDC recognizes. The district court identified… Well, the district court recognized that several times, and that goes into quite a bit of detail about I'm aware of his medical problems. He describes his history of lupus and kidney problems, blood pressure, 14% kidney function, stage five renal failure. He has related conditions that span off from his kidney problems. And then it identifies what's happened in the penitentiary on how the Bureau of Prisons has addressed those. That's correct, Judge Agee. The district court recognized that Mr. Bethea's conditions would put him at elevated risk of COVID-19. And that would undoubtedly qualify Mr. Bethea as a baseline for consideration for Compassionate Police. That's well established in cases like Hyde, Hargrove, that way. So the district court identified three points that could have possibly flipped Mr. Bethea from qualified to disqualified. First is the vaccine point, and we think that read fairly against the backdrop in the law in this area, that was dispositive. But the other two points that the government identified… So tell us were you or Mr. Bethea ever made that argument to the district court? Yes, Your Honor. So Mr. Bethea raised a JA-150 to 151 and JA-204 to 209 is elevated COVID-19 risk. I'm talking about vaccine. Where did you tell the district court specifically that because of the vaccine, that was inadequate as a matter of law for Mr. Bethea's situation? Yes, Your Honor. At JA-283, Mr. Bethea's appointed counsel, which he had been appointed just minutes earlier, indicated that Mr. Bethea's ongoing elevated risk existed notwithstanding vaccination status, Your Honor. I don't think there's any question that the district court recognized that at multiple places. So you've got to tell us where, in recognition of that, why the district court's explanation at some length was inadequate. Inadequate as of that date, not as of today. Well, that's correct. Yes, Your Honor. And we do focus on March 2021, although the last year and a half has confirmed an elevated risk notwithstanding vaccination status. The district court essentially, getting back to the three points that the district court identified, first was vaccination, second was the BOP's general mitigation efforts, and then third is that Mr. Bethea was isolated after he was exposed one time. Those second and third considerations would be insufficient to disqualify Mr. Bethea on their own, essentially because they didn't either address the particular risk that Mr. Bethea faced. What if we give you that the district court erred on this extraordinary, compelling reason analysis? We still could affirm this on the fact that the district court used those 3553A factors there. Considering the hearing transcript, when we look at his whole abuse of discretion standard, can we fairly say that the district court abused his discretion? I mean, look at it. By my count, it looks like he considered at least eight of those factors there. Why is that not enough to assure that it has a reasonable, a reasoned basis for his decision? Well, Your Honor, the 3553A analysis the district court here is a poor alternative basis for affirmance for a couple of different reasons. The question is, you can establish the first extraordinary, compelling reason analysis, but we still could affirm it on that. You characterize it as being poor, but he considered at least eight of those factors in there. Well, the key one that it didn't meaningfully consider, Your Honor, is rehabilitation. And as this court's cases most prominently, Martin made clear, a detailed, individualized explanation of rehabilitative efforts like Mr. Bethea has engaged in here, a nearly spotless, entirely non-violent seven-year disciplinary record. Actually, I remember the district court's, I remember what he said. He's only had two violations and I regard those as minor. So I know he did consider it. Well, it's not the sort of individualized explanation that Martin imagines, Your Honor. Well, what about something that's pretty individualized, if he knew the record well enough to know that they were minor? And to me, that counted in your client's favor. Well, yes, Your Honor, Martin directs, I think it's fair to say, a much more thorough analysis of why those efforts are meaningless, especially if a defendant is serving a license as Mr. Bethea has here. He did not conclude that they were meaningless. The district court, it seems to me, did think they were meaningful. He just put it along with all the other factors. Well, yes, Your Honor. We would argue that the Martin consideration needs to be more thorough and find support for that proposition in Petway, where the district court had also commended a defendant for rehabilitative efforts, but this court nonetheless vacated and remanded for a more thorough qualification analysis. And we think those rehabilitative steps are quite significant on this front, Your Honor, because as Martin, one of the key lessons of Martin instructs. His significance was the district court to consider rehabilitation, call it commendable. Do you think more needs to be done? Under Martin, yes, Your Honor. More needs to be done, a more individualized assessment. At the bottom of the district court's discussion at this point is essentially two paragraphs of transcript discussion. Martin suggests a more detailed walking through these steps. Mr. Bethea had been at that point in prison for five and a half years, Your Honor. He maintained an exemplary disciplinary record. Those are meaningful considerations. No one is looking for a reasoned basis for this decision, and he's considered at least eight of those factors. That's true, Your Honor, but- You pointed out on rehabilitation, for which he says it's considered or whatever, it's commendable. And you're saying even consideration of all those other factors, say, and then saying that the rehabilitation is commendable, he needs to do more? Yes, Your Honor. The key lesson of Martin is that the rehabilitation consideration, especially after so many years of incarceration, can meaningfully recast those other factors. So yes, it's true the district court addressed a number of other factors during the original resentencing that preceded the compassionate release hearing. But if the district court had meaningfully grappled with Mr. Bethea's rehabilitative efforts, those factors could well have been recast. The district court... I want to be sure. We have a lot of these cases, and I want to be sure I have the right one. The district court seemed again and again very concerned that your client had been selling drugs from his house when he was awaiting trial. That's correct, Your Honor. The district court repeated a number of times its concern about Mr. Bethea's pretrial release of Irish. Mr. Bethea did do that, and that's not an unfair thing to talk about, but your position is that the district court overly emphasized that, I guess. That's correct, Your Honor. The district court overly emphasized that, and it amounts essentially to a recitation of the original criminal behavior. Well, can I ask you a question? Do you make the... Is your argument rooted in the fact that your client has very serious medical conditions and that in and of itself gets him out of prison now? No, Your Honor. Mr. Bethea's very serious underlying medical conditions qualifies him at the first step of the compassionate release inquiry. Okay. Qualifies him for consideration. Okay. What other things does he have going for him on this? On the qualification front, Your Honor, or on the 3553A analysis? Well, why should he be getting out of jail except for his... in addition to his serious medical conditions? Well, Your Honor, we would return to the considerable rehabilitation efforts, his increased likelihood of getting a kidney transplant upon release, and his ongoing family support, all of which was either given extraordinarily short shrift by the district court or ignored entirely. Specifically, the kidney transplant issue, the district court did not address. The district court was aware that he needed a kidney, but did not address that he would have an increased likelihood of getting one if he was released, and the district court really didn't... The district court is currently still in line for a kidney transplant. My understanding is he is, Your Honor. Has not received one. But has not received one. It's extremely difficult to get a kidney transplant in Bureau of Prison's custody, as various courts have recognized, but the Central District of Illinois discusses it in self-satisfaction. Is he taken off the list by virtue of being in prison? I'm not sure the exact mechanics, Your Honor, but it becomes increasingly hard to get a kidney transplant, transplant of any variety, in Bureau of Prison's custody. Are his symptoms in remission? No, Your Honor. He receives dialysis two times a week, which maintains... What about his other problems? His other problems he's receiving medical interventions for, but I wouldn't describe him as being in remission, Your Honor. So as you're going back to your predicate, before we get to the 3553A part of it, am I correct in saying that because of the conditions he has, that in and of itself qualifies as a compelling reason as a matter of law, regardless of what the Bureau of Prisons does to treat or ameliorate those conditions? Judge Agee, I would say it makes it extraordinarily likely for Mr. Bethea to qualify at the first step of the analysis. But that isn't answering the question. We understand. Is it a get out of jail card? It's not a get out of jail card, Judge Monson and Judge Agee. At bottom, the key inquiry on this first step qualification for consideration question relies on a particularized assessment of a defendant's risk level. So it's possible to imagine a situation where Bureau of Prison mitigation efforts directed at Mr. Bethea... You're talking now about medical risk, not criminal activity risk. That's correct, Your Honor. Talking about medical risk of COVID-19. Let's assume that you are correct with respect to medical risk. I thought that was the gist of my colleague's question to you. Assuming you're correct there, does that get you out of jail free? No, Your Honor. The district court still needs to conduct the second step 3553A analysis. Does it continue? Which it did, but it's faulty because it didn't address the rehabilitation point as Martin directs. And so as a consequence, the 3553A analysis is insufficient alternative basis for affirmance. When you're talking this in terms of how these things are done, and I've seen other cases in which sometimes an individual gets so sick, you actually would allow them to go out and get treatment outside. And I'm thinking in terms of the medical treatment he's getting there, the COVID-19, and there's a consideration, but you indicated he's not gotten that. He's on dialysis and getting medical treatment continuously in prison. I take it that by releasing him, you think he's going to get better treatment on the outside or there's some advantage there. Well, Your Honor, the key benefit of early release for Mr. Bethea in this setting is that he could socially distance to avoid COVID risk. That's not something that's really easily available in BOP custody, and it's specifically not particularly easy at NCFP Springfield, where he's currently incarcerated. But is it a factor that he made this, this ruling made in March 2021, he's not gotten COVID yet. I mean, why is that something, all the things that are there, he's fully vaccinated, everything there, he's in prison. And it would seem some point in time, it's been over a year, year and a half or so now, he hasn't gotten COVID. He's getting full medical treatment, dialysis twice a week, he's in a setting where he's being monitored, you know, getting his behavior outside, whether that's to be considered or not. Apparently, if this is the case, I'm thinking about this, this is someone who had a deal, he didn't have to go to prison at all. Is that, am I talking about the right case? I see that I'm out of time, Your Honor, but if I could just answer your question. Go ahead. Thank you. He had a deal, didn't he? That he didn't have to go to prison at all. There was no... What the situation was, whether it was drug addiction or whatever, he just couldn't do it. Well, Your Honor, he was certainly going to prison the entire time, there was a pre-trial release violation, but for the reasons that we've discussed. Wasn't that a plea or something? Or do I have the right case? I mean, a lot of cases are different. But that's... Well, that requires... He was going to avoid life in prison, wasn't he? Well, he was still going to be incarcerated for a lengthy period of time, Your Honor. And the COVID risk point, I mean, the fact that he had been exposed one time suggests that the BOP's mitigation efforts were not sufficient to limit his risk. That I'll save the remainder of my time for rebuttal. All right. Thank you very much. Mr. DeHaul. Thank you, Your Honors. May it please the court. I'm Andrew DeHaul and I represent the United States. As the moving party, Mr. Bethea had the burden of persuading the district court that he was entitled to compassionate release from the sentence that had just imposed. He failed to meet that burden. He failed to demonstrate that he, in particular, had... Mr. DeHaul, according to the clock we have, he's gotten an extra minute plus already. Yeah. But you may not need. So, we're starting you over. All right. Go for it. Thank you, Your Honor. As I was saying, he failed to meet his burden. He did not show he, in particular, had extraordinary and compelling circumstances making him eligible for release. He did not... On the other side, on that point, it seems to be that the district court essentially did it on a per se kind of basis, the vaccination. And we sort of addressed that at the beginning, but any further comments on it that... You know, I don't want to put words in the court's mouth, but I believe the reading of the transcript, that it was a full consideration of the evidence presented to it, is correct and is consistent with what this court later said in Hargrove, which is that it's a totality of the circumstances analysis based on the evidence that's presented to the district court. So, looking at the totality of the circumstances here, why does his conduct warrant more serious punishment than the majority of his co-conspirators? Well, one thing that the district court pointed out in the sentencing phase was there was a discussion about acceptance of responsibility. And what the district court noted here, this wasn't a garden variety act that caused Mr. Lue's acceptance. It was... I understand. It was this business about selling out of his own house. Correct. It was being on release, awaiting sentencing, and really returning to the conduct that had gotten him indicted in the first place. So that distinguished it.  Why is that conduct, which is bad and silly. Why does that conduct outweigh his behavior sense, which the district court recognized was a good record? The district court was concerned about further return to that kind of conduct as was brought up in the other argument. There was a plea deal here that was going to allow Mr. Bethea to avoid what was then a life sentence and try and get back on the kidney transplant list. He was actually on the transplant list and was about to get one and was arrested for the underlying conduct. So he was allowed to have those things. And despite those really incredible once in a lifetime incentives, returned to bringing drug dealers into his home to cook crack cocaine. That gave the district court a lot of pause that if those incentives weren't enough to deter him then, an early release would not be a deterrent from further activity on that front. And I really do understand the district court's chagrin and justifiable horror in what he did. But what I'm looking for is a balance here because that's what the district court is about. And, for example, does the brief mention of mitigating conduct meet the standard that we set forth in McDonnell? And it is very brief. I think it does. So first, I think the takeaway from McDonnell and Martin is to have something in the record indicating that the court did listen and considered the rehabilitative efforts in prison. And here I would note that it wasn't even that the judge considered it. He was actually the one who brought it up. I think it's that page, I think it's 259 of the JA. He said, well, we've got this case where Judge Gregory is talking about a mountain of mitigating evidence. What do you have to say about that? And he pressed the AUSA on that matter. And as Your Honor has pointed out, he did go on to say, I think it was commendable. You got a relatively minor record. But and then at the conclusion of his argument, he says, not argument, his explanation, he says, I just can't get around this breach of trust on on pre-sentencing release. So I think that shows consideration and certainly not just an oversight or refusal to consider that evidence. But then the I just can't get around language signals away. The question really goes to the question of why did the district court explain why this mitigation evidence was insufficient in the case of Martin and McDonnell? And when you think about the behavior of the 2015 behavior, it seems like it's double counted because he already did that. The question is, is it possible to overcome that with sufficient rehabilitation evidence? And he had a virtually flawless record since being incarcerated, including when he thought he was in on a life sentence. So that's really kind of the troubling fact of dealing that, as I understand, we're dealing with the first prong here, the prong that deals with extraordinary, compelling reasons analysis. So but, you know, when we go to that extent, that seems to be problematic as to why it never explained why that mitigation evidence was insufficient. Well, I think in that colloquy with the AUSA, when he presses him to say, why wasn't that enough? The ultimate conclusion is that was, well, it hasn't been as long. It hasn't been as or as long as McDonald or Martin. And there has been some effort to get relieved from the sentence through appeals. And so the district judge indicated, I think I don't want to misquote him, but I believe he said, well, OK, maybe that carries a little less weight. So I'm sorry, I didn't understand your answer, and it wasn't a very good one. I apologize. So my understanding in reading this record is when they discussed Martin and the rehabilitation efforts on, I think, JA 258 through 260, the judge ultimately says, OK, well, I see that maybe this evidence of coursework and discipline is commendable, but maybe it's not quite as compelling as what was there in Martin and McDonald. And on top of that, he hasn't been in prison quite as long as some of those people. So maybe it does carry a little less weight to me. Is that the appropriate analysis? I think it's a permissible analysis to say that maybe the facts of those two cases are distinguishable. And so it doesn't carry as much weight on that. It certainly is just it. I mean, I don't think there's any disagreement that the judge was still taking that into consideration. He never said, well, I'm just going to disregard that. And I don't care about that. It was a balancing of several different considerations. It just happened to not be the one that prevailed. I guess that I'm so struck by the fact that the district court, that all roads lead to him selling the drugs outside of his house or from his house before he was ever sentenced. And and that is stupid and bad and everything else. But if you're never, ever going to that locks you in prison forever, I don't know. Well, I understand the concern, and again, I think it wasn't just, well, you were charged of selling drugs out of your home. It was you went back to this despite having such a great chance to avoid a harsh sentence. You did it in a home that, well, your family was not there, but you shared with them. It was it was and you did it despite having a chance to get a kidney transplant. I think that was what really bothered the court was not simply that it was selling the drugs. It was, wow, what what more could you have gotten out of this? And if that wasn't enough, then maybe letting you out early isn't going to be part of his plan for release here on compassionate release was he's going back the same the same environment where this happened before. So I believe at one point he talks about maybe living with his mother or his mother in law. He does talk in his letter to the court that he read during the hearing that he wanted to go back and live with his family. So that would be that would be an issue of itself. I can't say that the district court specifically talked about the potential for living with his mother in law. But I think if you look at the record where I think it's a 291 to 292, you know, I just can't get around that he was doing this at home that he shared with his wife and kids. So I think that signals some concern about him, Mr. Bethea going back to his wife and kids because it wasn't a sufficient deterrent last time. Well, what about the I don't know, it may have been a discussion between the court and the and the government. Well, it seems like I remember there was some discussion about part of the rehabilitative effort would be to get a job. He was coming to work at UPS and the point was made that, well, he was on social security disability. How's he going to do that and work for UPS at the same time? Right, but I remember in the right case or if I've got this. You are your honor and I have to admit I don't have a J site for that one. But that was something that the government brought up in response was that it does seem inconsistent to say that he's going to get disability if he has a job lined up. So was there an overt credibility finding on that? There wasn't, but that was an inconsistency that was explored in it that seemed to give the district court some pause. So if if if perchance Mr. Bethia didn't succeed on this particular compassionate release, is there any barrier to him filing another one tomorrow? No, your honor. Now, while this appeal is pending, the district court couldn't rule on it. But, you know, as this court said in Holt, there's no bar on successive compassionate release motions. And so if there's new evidence that Mr. Bethia wants the BOP and then the district court to consider on his medical needs, the circumstances of COVID, how it might affect him and further rehabilitative efforts, family circumstances, anything like that, he's he may do that. He's not stuck if this court affirms. Anything else you want to tell us about? Your honor, if there are no further questions from the court, we would respectfully ask that the district court affirm. The judge, one question, sure, we discussed the rehabilitation and this is a two prong analysis. And that goes, in my opinion, it looks like it goes extraordinary compelling. Reason analysis, there's few to 35, if the three factors, it's a separate basis upon which we could affirm the district court. Are they separate in terms of the thought process, particularly as we discuss the consideration of mitigating rehabilitative factors, if those factors outweigh, at least in the judge's opinion, discretion of the rehabilitation? I think, Judge Wynn, I think that the same facts and considerations can play into both. I was actually thinking about that this morning, is are they, do you have to separate those into two steps? And, you know, I think it was the Harris case where this court actually vacated because the district court did not consider rehabilitation in the first step, said, no, you don't get to consider that until the second. And really, as a practical matter, a lot of the same facts are going to be relevant to both considerations. For example, if someone's terminally ill with cancer, that probably is going to give them extraordinary compelling circumstances. And if they're so ill with it that they're bedridden, they probably have a low risk of recidivism on that, too. So I do think that the same considerations can factor into both. And I think that's, that was done here. All right. Thank you very much, Mr. DeHall. Mr. McClellan, you've got some rebuttal time. Thank you very much, Judge Agee. I'll address one of the last questions by Judge Wynn first. Typically, I think this court views rehabilitative efforts actually in the second prong 3553A analysis. That's what it did in cases like Martin, for instance. So considering the rehabilitative efforts in that second prong 3553A analysis really puts into context the other sentencing factors. As we've discussed, the rehabilitation analysis the district court did here was pretty short shrift. And I think it's worth actually diving a little bit into how the district court seemed to distinguish cases like Martin and McDonald. The district court discussed those cases as the opposing counsel mentioned, JA 258 through 260. And its ultimate conclusion on why Martin and McDonald were basically irrelevant here appears on JA 260. District court says that there's new law coming down on sentencing. So essentially, Mr. Bethea's rehabilitative efforts are less significant, can be disregarded just because there's a new act out there, even though he had been serving five and a half years up to that point on a life sentence. The government also raises in its response brief on appeal an additional basis for distinguishing Martin and McDonald. The fact that Mr. Bethea had fought for years to challenge his original sentence, I think that's also inconsistent with Martin for pretty straightforward reasons. Namely, Ms. Martin also challenged her sentence repeatedly prior to receiving relief from this court. One additional point on the successive petition issue. Certainly, Mr. Bethea does not have a bar on filing a successive motion. In this case, he could file another motion for compassionate release. But this court has long recognized that these issues are appealable, and as a consequence, should be analyzed in the context of the original district court decision on the subject. The district court's decision here was erroneous. It erred on the qualification front by failing to conduct a particularized inquiry into Mr. Bethea's ongoing COVID risk, notwithstanding his vaccination. And then the 3553A analysis is sufficiently deficient to not constitute an alternative basis for affirmance here. The court has no further questions. I'll return the balance of my time. All right. Thank you, Bert. Thank you very much, Mr. McClellan. Can I ask you just... I'm sorry. Yeah, go ahead. So when the district court was going through and looking at this case, um, he talked about prior convictions. And then he said, but he spent little time incarcerated. Does that... Is that an appropriate thing to look at? I don't think so, Your Honor. Why not? The limited number of times that he... That limited period of time he'd been incarcerated, Your Honor? Yes. He had many convictions, but he hadn't gone to jail, is what the district court is saying, hadn't gone to jail for very long. Is that an appropriate thing to look at? Beyond factoring into the guidelines calculation, it's not obvious to me that it is. We haven't briefed the issue in great depth. We're happy to provide supplemental briefing on the issue if that would be helpful, Your Honor. Yeah, you can see that we're... I think it's a pretty close case, and we're scratching around to find what's there. And I think we... I'm satisfied with just saying that the district court, the argument that you put forth in your brief, that doesn't seem satisfactory to us. And I just... So... You have nothing to tell me about that. Okay, fine. Your Honor, to the extent it's a head-scratching close case, it's certainly one that would benefit from additional explanation by the district court. A lot of its explanation is quite brief, as Your Honor identified with respect to the rehabilitation... This is a little out of the ordinary, because you have one hearing, the bulk of which goes to a resentencing, which your client got, and a compassionate release. But it was all done in one proceeding, and so you've got all this information in there, some of which may be relevant for the resentencing, some for the compassionate release, and some for both of it. It's not like the ordinary compassionate release hearing, where it's just an isolated consideration. That's correct, Judge Agee. It is an unusual posture, but even if one considers the resentencing discussion, the lack of meaningful, in-depth analysis of the rehabilitation, nonetheless dooms the compassionate release 3553A analysis. For those reasons, we would respectfully request that this court vacate the matter and remand with instructions to consider Mr. Bethea's ongoing COVID-19 risk, as well as to consider the 3553A factors, including rehabilitation. So you were court-appointed? Yes, Your Honor. Well, that's fine. And when you leave today, you're going to leave Mr. Bethea behind? Is that right? No, Your Honor. When you find the system in whatever additional capacity, if the court is interested in appointing counsel for further district court proceedings, we'd be open to that as well, Your Honor. Thank you. Well, I do want to note that you are court-appointed, and how much the court appreciates your agreeing to assist the court and the administration of justice, which we could not do unless there were individuals like you who are willing to undertake this. And I want to compliment all counsel on the excellent job they did today, and say again that ordinarily we'd be coming down to shake hands, at least with you all, but we're not in that practice at this time. So with that, I'd ask the court to declare some recess very briefly, and then we'll come back and take up our third case.
judges: G. Steven Agee, James Andrew Wynn, Diana Gribbon Motz